Judge Hise
delivered the opinion of the Court.
In the year 1841, Seth Cook died intestate in Hickman county, Kentucky, leaving an estate in slaves, goods, and chattels, and choses in action, of the value of several thousand dollars. At the March term of the Hickman County Court in 1841, Price Edrington was, by the order of that Court, appointed administra *312 tor of the estate — was duly qualified, and executed his bond as such, according-to law. Edrington as administrator under this appointment, took the estate into his possession and entered upon its administration, tie returned an inventory and appraisement, and sale bill, which were filed and recorded, and disbursed a small portion of the assetts in the payment of debts, as he alleges in his answer. The securities in his official bond becoming apprehensive of future liability, proceed against Edrington in the Hickman County Court upon motion for counter security, and he failing to furnish such security, the Court at their April term, 1842, make an order that Edrington be removed as administrator, and that the sheriff should proceed forthwith to take into his possession the estate of the intestate and safely keep the same, subject to any future order of the Court. At the date of this order, E. T. Wright was the sheriff of Hickman county, and L. D. Stephens was his deputy. Edrington delivered over to Stephens as deputy sheriff, the assetts remaining in his hands belonging to said estate, for which, Stephens executed his receipts ; afterwards, E. S. Watson was appointed deputy sheriff of E. T. Wright, to whom, it is presumed, Stephens delivered the assets, which he had received from •Edrington.
The County Court of Hickman, at its February term, 1844, ordered that E. T. Wright, the sheriff should make'a settlement with the county commissioners, appointed and authorized for such purpose, of his administration of said estate.
And on the 14th of February, 1844, the said commissioners make and report their settlement with E. L. Watson as deputy sheriff of E. T. Wright, showing that at that time, upon the report of this deputy, the said estate consisted of uncollected claims . amounting to $2003 95-}, and of a balance in cash after allowing, credits for disbursements, amounting to $136 41-}. This settlement was approved and recorded. Then at the March term of the, Hickman County Court, in 1844, *313 when, it is presumed, the term of office of E. T. Wright had expired, and when the defendant, Lewis Scarce, had been commissioned as sheriff of Hickman county, the Court by its order directs “ that the j-.lerk of the Court hand over to the sheriff of the couuty all the papers and evidences of debt belonging to the estate of Seth Cook, dec’d., and that the sheriff proceed to collect all demands due said estate.” At the date of this order the facts are not questioned that Lewis Scarce was the sheriff of Hickman county, and N. E. Wright was his regularly appointed deputy.
The assets of said estate in the form of uncollected debts and money, was, on the 5th of March, 1844, delivered over to N. E. Wright, deputy sheriff of L. Scarce, in pursuance of the order by the clerk of the Court, to whom, doubtless, they had been previously surrendered by E. L. Watson, who had been deputy sheriff under E. T. Wright, and to whom a receipt is given by N. E. Wright, D. S., for L. Scarce, the sheriff of Hickman county. At its November term, 1844, the sheriff of the county, by an order of the County Court, is directed to sell ón 12 months credit, one, or two, of the slaves belonging to the estate, as might be necessary for the payment of debts.
Two slaves under this order were sold by N. E. Wright, who as it appears, received the proceeds and applied them, together with the whole estate in his hands, to his own use, or squandered and wasted the same, without ever having been brought to a settlement with the County Court, or before the county commissioners. After the lapse of three years and more, the County Court in the meantime having failed to take any further steps to preserve the estate, or to withdraw it from the hands of N. E. Wright, or to commit it to the successor of L. Scarce in the office of sheriff — Thos. S. Page, with other creditors of the estate of Seth Cook, dec’d., in August, 1847, filed their bill against the said sheriff, L. Scarce, and all the securities in his official bond, against N. E. Wright, deputy *314 sheriff, and against the heirs and distributees of the intestate, in which they insist that Scarce and his security shall be held responsible for the whole estate, which, under the order of the County Court of March, 1844, was placed in the hands of his deputy, the said N. E. Wright; they demand a settlement of the estate through an auditor of the Court’s appointment, and ask the Court to render a decree in their favor, against L. Scarce and his securities, for the amount of their several demands, and for general relief. L. Scarce, the sheriff, and two of his securities, namely, H. Wright, and S. P. McFall, answer and deny that they or either of them, are responsible according to Jaw, for the defalcations of N. E. Wright, the deputy sheriff, into whose hands alone, the assets of said estate were committed. They deny that the County Court of Hickman had-jurisdiction or lawful authority to make the order of March, 1844, directing the clerk to deliver the as-setts of said estate to the sheriff or requiring the sheriff to colloct them, they deny that Scarce ever received from the county clerk or from any other person the said estate, or any part of it, but they suppose that it was placed in the hands of N. E. Wright, and insist that he, and not they, is responsible.
"Th# dtcree of the O i r c ui t <¡01111.
The auditor who had previously been appointed for that purpose, ascertains the amount of said estate, and 1 , 1 , . makes his report, showing that amount to be more than sufficient, if available, to pay all the debts of the intestate, leaving a considerable balance to be divided amongst the distributees.
The Circuit Court decreed that the defendants, L. Scarce, and his securities, should pay to the complainants in the bill, the amount of their several demands» and that they should pay over to the distributees the balance of the estate left after the payment of the debts.
From this decree Lewis Scarce, the sheriff, and the securities in his official bond, have appealed to this Court
A question for decision:
A sheriff to-whom the estate* of a decedent? has been committed by the County Court, for administration is liable in* a suit in chnn--cevy to distribu-tees, (1 B. Mon,. 59,) and his sureties on his official bond are ie-sponsible to those interested».
The question presented in this case for the consideration of this Court, and so far as recollected, for the first time, is one of much importance, and the settlement of which, is a matter of considerable interest to the community. It is this: Have the County Courts lawful authority and jurisdiction to commit the'estates of decedents into the hands of the sheriffs of their respective counties, and charge them with the administration thereof, in cases where an administrator had been previously appointed and removed; and are the sheriffs so ordered to take charge of, and administer estates, and the securities in their- official bonds by law responsible.for delinquencies, with respect to the preservation, due administration, and distribution of such estates, by suits in chancery instituted by the distributees or creditors, whether the sheriff does, or does not, assent to such order, or take the estate himself, but which is delivered to, and received by his deputy.
This Court has decided in -the case of Williams and others vs Collins and others, (1 B. Monroe, 59,) that the sheriff and his securities may be held responsible in chancery at the suit of distributees for settlement and distribution, in a case where an estate by order of the County Court is committed to the sheriff after the expiration of 3 months from the death ‘of the intestate, and where there had been no previous appointment and removal of an administrator. That the County Court having the power to appoint the sheriff, the legal duty and obligation is imposed on the sheriff to act in such cases, and he, officially, and his securities in his official bond, should be held responsible to those interested, for his delinquencies. But it is contended, that in this case, the sheriff and his securities are not «responsible, because the County Court of Hickman county had no power under the 57th section of the act of 1797, (ls¿ Statute Laio, 670,) to charge the sheriff with the custody and administration of the estate of Seth Cook, dec’d., by the order made at the March term of the Court, in 1844.
The statutory provision on the subject.
The 57th section of the act above referred to, provides, that “If all the executors, named in any last will, shall refuse to undertake the executorship, or being required to give security, shall refuse to give, or be unable to procure the same, and no person will apply for administration with the will annexed; or, if no person will apply for the administration of the goods and chattels of any intestate, it shall be lawful for the Court having jurisdiction of such probate or administration, as herein before named, after the expiration of three months from the date of the death of the testator or intestate, to order the sheriff of the county to take the estate into his possession, and make sale of so much thereof, by public auction, as the payment of debts shall make necessary, or as shall be perishable, or be directed by will to be sold.”
The order in question, it is urged, is unauthorized by this law, because Price Edrington had been duly appointed and qualified as administrator of Seth Cook’s estate, and took upon himself its administration, and that a vacancy occurred in the office of administrator, by reason of his subsequent removal by the County Court at their April term in 1842. That the vacancy in the office of administrator in this case, was caused and created by the County Court. And that they had no right to order the sheriff to fill such vacancy, caused by the removal of an existing administrator who had applied and been appointed to administer within 3 months from the death of the intestate. That the authority of the County Court to order the sheriff to administer, only exists in cases where, from the death of the intestate, there has been no application made by any person to administer, and where a continued vacancy in the administration exists, and is occasioned for want of such application, for, and during three months, from the death of the intestate, and until the order should be made requiring the sheriff to take charge of the estate. To sustain this construction of the statute, the case of Roop, &c. vs Rodes’ adm’r., *317 (7 B. Monroe, 111,) is relied upon. The question presented in this, and in that case, are not the same.— This is a direct proceeding against the sheriff and his sureties by the creditors of Cook’s estate, to make them liable for a settlement and distribution thereof amongst them and the distributees, because of the order charging the said sheriff with its administration.
The case distinguished from the ease of Hoop &c. ■vs Bodes aam'r, (7 B. Monroe 111.)
The County Court may lawfully under the 57 sec. of the' act of 11797,-
The question in the case referred to, was upon an order made by the Edmondson County Court, in a proceeding of the sureties against an administrator for counter security. The administrator there replied to the rule to show cause, &c., that he was neither able or willing to give the counter security required. The County Court in their order removed 'the administrator on the condition that his sureties, or either of them, wmuld take and administer the estate, which they refused to do, and appealed to this Court; the order of the County Court was affirmed by this Court. In the-reasoning introduced to sustain that opinion, it is incidentally suggested, that “as there was already an administrator who had given bond with approved security, the case was not such, as under the 57th section of the act (1 Statute Laws, 670,) authorized the Court to commit the estate to the sheriff in his official character and under the responsibilities of his official bond.”
Take this extract literally and by itself, and it would seem to mean only, that the County Court had no right to take the estate from an existing administrator, and commit it to the sheriff. But when taken in con-nexion with what precedes and follows, it is obvious that in the opinion it is intimated, that if an estate is left without administration by the removal of one who had upon application, been regularly qualified and appointed administrator, then in such cáse, the County Court would h.ave no authority to order the sheriff to take the estate and administer it.
This view was doubtless entertained and expressed at the time, to fortify the decision of the Court upon a question different, materially, from the one involved in *318 this case, and the subject was probably not considered with that care and deliberation then, which its magnitude and importance requires, and which, indeed, would, in all likelihood, then have been given to it, had the question, then, as now, been directly presented. It is, therefore, not admitted that in consequence of the opinion incidentally offered in the decision referred to, the question has been authoritatively settled. The 57th section of the act referred to, should receive such liberal construction as to effectuate, and not obstruct the intention with which it was framed — and it seems, that intention must have been to provide for cases of estates left unadministered, whether caused by a failure to apply for administration upon the death of the intestate, an abandonment of the administration or the removal by the County Court of an existing administrator.
Slat Law 570,) commit to the hands of the sheriff the estates ofdecedent as well where an administrator is removed as where none has ever qualified, and the sheriff and his sureties •will be liable on his official bond to those interested in a faithful administrator of such estate.
The object was to provide for all cases, however they might occur, where there was no person charged with the administi’ation of an estate, and in ail such cases, if no application be made to administer by a competent pex’son who could furnish competent security, the County Court has the right to have such estates administered through the instrumentality of its own officei’, the shei’iff — who with his securities in his official borxd, will be bound to a faithful discharge of the duties and obligations growixxg out of such trust. The right to chai'ge the shex’iff with the administi’ation of estates is in cases where no person applies to administer, where the office is vacant from any cause, or however such vacancy is produced, so that the appointment of the sheriff be not made until after the expiration of three months from the death of the testator intestate. It is not necessai’y in order to the validity of the sheriff’s appointment that it should be made only in cases where there never had been an administrator appointed at all, or only whei’e there had been a failure to apply for administi’ation from the period of the testator’s death ’Until the expii’ation of thi’ee months. Such is not the language nor meaning of the statute. It is true that *319 in no case can the County Court order the sheriff to administer uutil three months after the testator or intestate’s death has elapsed. But after that time has elapsed, if their is an estate without an administrator, however it may happen, or hq,ve been caused, then in the language of the, act, “If all the executors named refuse to undertake, &c., or if no person will apply for the administration of the goods and chattels of any intestate, it shall be lawful for the Court, &c., to appoint the sheriff.” If an estate be without an administrator, whether because one that had been appointed was removed, or because no administrator had ever been appointed at all; in either case the authority of the County Court alike exists, by virtue of the statute, to order the sheriff to act, provided no person applies to administer, and provided such order is not made until after three months from the death of the testator or intestate, has expired. This Court thus construes the 57th section of the act of 1797, and such construction, it is believed, is proper and necessary to be given in order that the obvious design and manifest intention of the law-givers should be carried into effect, as consistent with sound policy, and as best calculated for the preservation and security of estates, which as experience proves, it is necessary, often, to wrest from the, possession of faithless, incompetent, and insolvent agents, and place the same for security, in the hands of the sheriffs of the counties. It is believed that the law has received the same construction which we give to it by the County Courts generally, throughout the State, and a practice has grown up in accordance with it, of placing estates of greater or lesser value in the hands of sheriffs, in all cases where vacancies occur in any way, and where other competent persons do not apply for administration.
The sheriff and his securities in this case, are therefore responsible to the creditors and distributees for the estate of Seth Cook, deceased, which came to the hands of N. E. Wright, the deputy sheriff. More *320 than three months, nay, 3 years and more, had elapsed from the death of the intestate, before the sheriff, L. Scarce, was ordered by the County Court* to take charge of the estate.
If a deputy sheriff lake charge of an estate committed to the sheriff, the principal and his sureties are bound, as though the principal had receipted for it.
There was no administrator at the time, and it does not appear that any person applied to administer after Edrington’s removal, and before, or at the time of the sheriff’s appointment, although Lewis Scarce, the sheriff, did -not himself, take charge of this estate, N. E. Wright, his deputy, did, and he and his securities are responsible for the deputies delinquency with respect to the estate.
But the decree in this casé is erroneous in several particulars, for which it must be reversed :
1st. There has been no allowance or commission given to the sheriff.
2d. The sheriff appears to be credited in the decree by the sum of $1919 50. The reason for which is not perceived, and its correctness is not made to appear by any thing státed in relation thereto, either in the decree or auditor’s report.
3d. The sheriff should not have been charged with the uncollected claims in his hands as so much cash received, from any evidence furnished by the auditor’s report, or otherwise in this record. The claims may be worthless'.and uncollectable. It is true, the decree states that the claims are collected or collectable, but there is no evidence whatever, in the case upon this subject. If the claims are uncollected, and the evidence thereof, within the possession of the sheriff or his deputy, they should be required and permitted to produce and hand them over to a receiver, and be credited by the amount. And they should not be charged as cash, against L. Scarce, unless they have been collected, or lost through negligence, or they shall fail to produce them when required.
4th. L. Scarce should not be charged with the sum of $149 15, the balance including interest, which remained in the hands of Price Edrington, the first adminis *321 trator, who had been removed; as it does not appear from the auditor’s report, or any other evidence in the cause, that he is liable therefore, several of the demands set up by complainants are unsupported by any proof, except that they have been presented to the County Court and filed. For instance, the order of the County Court in respect to the claim of the complainant, W. S. Church, recites, that “he produced a record of' a judgment against him, as the security of Seth Cook, deceased, which he has paid off as such security, for the sum of $306 20, and $20 69, costs,” which is ordered to be filed. This claim is not sustained by any parol or record evidence in this case, and there is no proof that he was security of Cook, so far as appears.
oueiiu 5 io whom estates are committed, should be reasonably compensated for their services — a r. <1 should be charg ed with all claims due the estate, unless they are shown to be unavailable — and credited by such as are unavailable, barred by limitation &c., and the shares of each distributee of the estate ascertained.
It is impossible to say, whether the claim of the ■complainant, A. Harper, should have been allowed or not, from any evidence which appears in this record.
The County Court order in his case, recites that his demand was in the form of a decree of the Franklin Circuit Court, against B. Edrington' and Seth Cook, and the order allows it, and directs it to be paid out of the estate when collected. But the amount of the claim is not stated in the order, and the record evidence of the demand is not exhibited in this case. It is true, the auditor states the claim in his report as amounting to $643 32, principle and interest, and $14 08 costs; but refers to no evidence or voucher from which he ascertained the existence of the claim or its amount. The counsel for Harper insists that as this claim is reported by the auditor, and as this report has been reeeived-and approved and no exceptions taken to it, it should be regarded as conclusive evidence of the justice of the claim. We do not think, under the circumstances of this case, that the defendants should be concluded by this report. It is obvious that the sheriff and his securities from their answers, rested their defence exclusively upon the legal questions presented in respect to the construction of the'57th section of the act of 1797, and upon the supposed illegality of the County Cqurtorders *322 committing the estate to the sheriffs, after the removal of Edrington, and that little or no attention was given to the preparation of their defence in respect to the amount of the assetts with which they should be charged, the amount and validity of the demands set up, and in the amount disbursed by N. E. Wright .in the payment of debts, &c., many of the demands set up may have been paid either by Cook in his lifetime, or by Edrington, administrator, or the sheriff, E. T. Wright, and his deputies, who had the estate near two years before it came to the hands of the deputy of L. Scarce. Some of the claims are doubtless barred by lapse of time. Upon the return of the cause, the defendants should be allowed to amend their answers if they desire tó do so, and to have a full and fair settlement, so as to show truly the amount of assets, or disbursements, and of the existing demands.
M. Brown for appellants; Harlan and Herndon for appellants. _ •
The decree is irregulai;, if not erroneous, in directing a payment of an unascertained balance to the dis-tributees collectively. The shares of each should be ascertained and stated, and then directed to be paid to them, severally, to the adults in person, and to the guardians of the infant distributees, upon the execution of refunding bonds. The decree in this case does not appear to conform even to the auditor’s report, and defective as that is, there is no other sufficient data appearing upon which it is based.
Wherefore the decree of the Circuit Court is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.