Casperson *v.* Dunn. .

WILLIAM CASPERSON, administrator &c.,

*v.*

CHARLES H. DUNN et al.

1. An executor or administrator has no right to the opinion of the court upon matters arising under the will, not connected with his administration.

2. It is the duty of an executor or administrator, where personal property is given by the will to a trustee to be held in trust, and the trustee has refused to serve, and, no one has been appointed in his place, to take charge of the property, and protect and preserve it until a trustee shall have been appointed to receive it.

Bill for construction of will &c.   On final hearing on pleadings and proofs.

*Mr. M. P. Grey*, for complainant.

*Mr. E. S. Fogg*, for defendants.

THE CHANCELLOR.

The bill is filed by the administrator with the will annexed of Mrs. Susan Eliza Dunn, deceased, late of Salem county, for a

Casperson v. Dunn.

construction of her will, and instructions as to the administrator's
duty thereunder.   By the will, which is dated April 22d, 1879,
the testatrix, after ordering payment of her debts and funeral
expenses, gave all her estate to her trustee, thereinafter ap-
pointed, and to his successor in the trust, in trust, for the execu-
tion of the will and for the uses and purposes thereinafter men-
tioned and more particularly set forth.   She then gave to the
trustee and his successor the property on which she resided (a lot
in the city of Salem, with a house and barn thereon), together
with all the furniture, goods and chattels (including the cow)
about the premises ; the trustee to have and hold them in trust,
for the use, occupation and enjoyment thereof by her husband
and her son James during the term of the natural life of the
former, and she gave them, from and immediately after her hus-
band's death, to her two sons, Charles and James, for life, in
equal shares, and to the survivor of them for life, with remain-
der in fee to their lawful issue ; and in case they should leave
no issue living at the time of their respective deaths, she devised
and bequeathed the same in fee to certain other persons whom
she named.   She then gave to her trustee and his successor her
lumber-yard lot in Salem, with the appurtenances, stock in trade,
horses, wagons and personal property, in trust, for the use, occu-
pation and enjoyment of her husband and her son Charles during

NOTE.—Since the duties of a trustee cannot be imposed upon a man against
his will, or against his assent (*MacCubbin* v. *Cromwell, 7 Gill & Johns. 107*),
suppose no one can be found to accept the office of a trustee, administrator or
guardian, has a court the power to *compel* its clerk, or any other officer, to
execute the trust ?

Where there is no trustee, the trust devolves upon the court, *King* v. *Don-
.telly, 5 Paige 46 ; De Puyster* v. *Clendening. 8 Paige 295 ; McCosker* v. *Brady,
1 Barb. Ch. 329, 3 Denio 610 ; Dunning* v. *Ocean Nat. Bank, 6 Lans. 296, 61
N. Y. 497 ; Field* v. *Arrowsmith, 3 Humph. 442 ; Reynolds* v. *Bank of Va., 6
Gratt. 174 ; Johnson* v. *Roland, 58 Tenn. 203.* See *Burrill on Assignments (4th
ed )* § *268.*

For want of a representative, the ordinary may take a decedent's goods into
his own hands to administer, *11 Vin. Abr. 87 ; 1 Wms. Exrs. [446]*.

If guardians are recommended to act with the advice of J. S., and J. S. is
attainted, it devolves upon the great seal, *Beaufort* v. *Berty, 1 P. Wms. 703.*
In case of a public administrator, the court may compel him to act, *Flash* v.

Casperson *v.* Dunn.

the life of the former, and to the further use and on the further
trust that her husband and Charles should conduct, superintend
and carry on the lumber business there with her capital there
invested, the net profits to be paid over by the trustee to them,
in equal shares, for their sole and separate use ; and she gave the
lumber yard, " with the appurtenances as aforesaid described," after
her husband's death, to her two sons, James and Charles, in
equal shares, and to the survivor of them, during their lives and
the life of the survivor, with remainder in fee to their lawful
issue, and in case neither they nor either of them should leave
lawful issue living at the time of their or his death, she gave the
before-mentioned subject of the devise, in fee, in equal shares, to
certain other persons whom she named.   She then gave to
Charles and James, for life, in equal shares, and to the survivor
of them, for life, certain other real property, with remainder in
fee to their lawful issue living at their respective deaths, and in
case they should die leaving no lawful issue living at the time
of their respective deaths, then she gave the remainder in fee to
certain other persons whom she named.   She then gave all the
rest and residue of her estate to her trustee and his successor in
the trust, to have and to hold the same in trust, for the use, occu-
pation and enjoyment of her husband and her son Charles, for
the life of the former, and from and immediately after his death

*Gresham, 36 Ark. 529; Callahan* v. *Griswold, 9 Mo. 784; Scarce* v. *Page, 12
B. Mon. 311; Martin* v. *Paxson, 66 Mo. 260;* and in Georgia the clerk of the
court may, by statute, be required to accept the trust, *Johnston* v. *Tatum, 20
Ga. 775;* although after appointment he holds the position individually, and
therefore retains it after the expiration of his term as clerk, *Beale* v. *Hall, 22
Ga. 431; Aveline's Case, 53 Cal. 259;* see *Landford* v. *Dunklin, 71 Ala. 594.*

In *Ackerly* v. *Parkinson, 3 M. & Sel. 411,* an action on the case was held not
to lie against the vicar-general of the bishop for excommunicating plaintiff for
contumacy in not taking upon him, after appointment, the administration of
an intestate's effects, to whom plaintiff was next of kin, although the citation
under which he was cited was void in that it required him to accept, without
an option of renouncing, and the proceedings thereon had, for that reason,
been set aside on appeal.

In *Pate* v. *McClure, 4 Rand. 164,* a trustee died pending a suit against him
concerning the trust estate, and it was held that the chancellor, upon dismiss-
ing the bill, might direct the property to be sold by the marshal.—Rep.

she gave it absolutely to James and Charles, in equal shares, and to the survivor of them. She then appointed a trustee, but required him to give good security, to be approved by one of the judges of the orphans court of Salem county, and provided that in case of his death, resignation or refusal to act, that court should appoint some person or persons trustee or trustees in his stead. She appointed the same person whom she had named as trustee executor, and also trustee and guardian of the person and property of her son James, who was an imbecile.

By a codicil made June 14th, 1883 (her son James was then dead), she directed her trustee to apply $3,000 of the amount ($3,-500) of a certain life insurance policy which she held, to the payment of a mortgage upon her residence, and to hold the rest ($500), together with a mortgage of $1,000 which she held upon the "Snitcher farm," and invest the $500 upon mortgage and pay the interest of the $1,500 to her husband for life, and after his death to her son Charles for life; and after his death she gave the principal and interest to his issue, and if he should die without leaving issue, then she gave the principal and interest to certain persons whom she named. She then gave to her son Charles, in fee, part of the land which, by the will, she had devised to him and his brother for life. She then substituted another person as executor and trustee instead of the person appointed by the will, and provided that if at any time her husband should desire to retire from the lumber business, for any cause, her trustee or his successor should have full power and authority to sell and dispose of one-half of that business and her capital invested therein, and invest the proceeds for the use of her husband; and she "revoked her appointment of a trustee over her son Charles, and gave and bequeathed the said property to him in fee simple, without the intervention of any trustee whatever as to such property as was therein intended for him." The testatrix died in May, 1885. Before her death she received the $3,500 upon the life policy, and paid off the mortgage of $3,000 upon her residence. The balance ($500) of that money cannot be traced or identified. The person named in the will as executor and trustee refused to prove the will or to act as trustee. The com-

plainant was appointed administrator *cum testamento annexo,* but no one has been found willing to accept the trusteeship. The estate has substantially been settled. The lumber business referred to in the will and codicil was carried on, up to the time of the testatrix's death, by her husband and Charles, under the firm name of E. W. Dunn & Son, agents, she being the principal; and the business is still carried on by them. According to the bill, at her death there was a large stock of goods on hand there, and there were many book accounts and sundry notes, judgments and evidences of debt in the business, in favor of the testatrix, and there were also accounts and notes due from her therein. She owned, at her death, the property before mentioned as her residence, with the usual articles of household furniture therein, and she owned and kept a cow there, also.

The complainant asks instruction, first, as to whether he has power to sell the business of the lumber yard, the stock in trade &c. (not including the real estate), in case the testatrix's husband and son, or either of them, should, before a trustee shall have been appointed, refuse to carry on or superintend the business, and also as to what power he has in the premises; second, whether he should deliver the personal estate remaining in his hands after paying the debts, to any one other than a trustee to be appointed under the will, or one appointed to carry out the trusts thereby created; third, what parts of the testatrix's property vest in the trustee, and what parts go to Charles in fee without the intervention of a trustee; and fourth, which, if any, of the trusts created by the will and codicil, will continue after the death of the testatrix's husband, and if they, or any of them, will so continue, as to what part or parts of the property, and for what period of time.

The complainant is merely administrator with the will annexed. The trusts under the will do not devolve upon him. His right to come into this court for instructions is confined to matters of difficulty in his own administration. As to those in which the trustee and his *cestui que trust* alone are interested, the complainant has no right to the opinion of the court, and it would not be proper for the court to give it. And so, too, as to the construc-

tion of devises in the will, with which he has nothing to do. In the subject of the third and fourth questions, except as to Charles's right to the personal property, he has no interest and consequently can have no adjudication thereupon.

The will gives the testatrix's lumber-yard lot, with the appurtenances, stock in trade, horses, wagons and personal property, to the trustee, in trust, to have and to hold them in trust, to the use, occupation and enjoyment of her husband and Charles, for the life of the former; and upon the further trust that they shall conduct, superintend and carry on the lumber business there with her "said capital" there invested, and that the trustee shall pay over to them, in equal shares, the net profits thereof. They are both still living, and, as before stated, they were carrying on the business at the time of her death, and have been carrying it on ever since as contemplated by the will, except that there has been no trustee. According to the testimony of Charles, the business is active and solvent. By the codicil the testatrix provides that if at any time her husband should for any reason desire to retire from the business, the trustee shall have full power and authority to sell and dispose of one-half of her capital invested therein, and invest the proceeds for the use of her husband; and she revokes the appointment of a trustee over Charles, and gives and bequeaths "said property" to him in fee simple, without the intervention of any trustee whatever as to such property as therein (in the codicil) intended for him.

It is the duty of the administrator to take charge of and protect and preserve the personal property given by the will to the trustee in connection with the devise of the testatrix's residence and the devise of the lumber yard respectively, until a trustee shall have been appointed to receive it. Those bequests are of specified portions of the testatrix's personal estate and they are specific bequests. *2 Wms. Exrs. 1158, 1159; 2 Redf. Wills 457.* The gift of the residue of personal property is a general legacy. It is the duty of the executor to get in all the estate, whether specifically bequeathed or otherwise, and to preserve the property specifically bequeathed. *2 Wms. Exrs. 1440.*

Nor is Charles entitled to have half of the personal property

which is given in connection with the lumber yard, paid or delivered over to him now. The testatrix intended that her capital in the business should remain therein until the business should be terminated by the voluntary retirement of her husband therefrom or by his death. The complainant, as administrator, should collect the money invested in the lumber business, and should pay the testatrix's debts incurred in that business. He is chargeable with the one and liable for the other. There is now no one to receive the legacy. The administrator is also chargeable with the testatrix's personal property at the residence, and is liable to account for it. That, too, is given to a trustee, but as yet there is none.