### MOORE *v.* CLINE, administrator.

115  405
Case 2
o119  460

1. There being sufficient evidence of a gift or sale by the son to the mother, consummated by delivery, and no evidence to the contrary, the verdict against the claimant was contrary to law.
2. An administrator, who is seeking to collect assets of the estate of his intestate and who is also a creditor thereof, is not rendered incompetent by anything in the evidence act of 1889 (Civil Code, § 5269), or any of its amendments, to testify as to communications or transactions between him and the deceased in regard to the property claimed as belonging to the estate.

Submitted March 1, — Decided April 29, 1902.

Claim. Before Judge Felton. Houston superior court. May 3, 1901.

*R. N. Holtzclaw* and *M. Kunz*, for plaintiff in error.

SIMMONS, C. J.  It appears from the record that Sam Moore and his mother and sister lived together upon a farm and cultivated it. At the end of the year the son told the mother that he had sold the crops and paid all the debts, and regretted that he had no money left to pay her for the services she had rendered him during the year. He offered her, in lieu of the money, his horse. He gave it to her, she accepted it and thanked him for it. There was but one lot or stable on the premises, and, as far as appears, the horse was not led out and actually delivered to the mother, but remained therein without ostensible change of ownership. The mother afterwards exercised ownership and dominion over the horse by driving it, and the son acknowledged her ownership by

stating to witnesses that he had given the horse to his mother.
This was in December, 1899. In May or June, 1900, the son
wished to purchase a buggy on credit. He went to two persons,.
but each refused to sell him the buggy unless he would give secu-
rity. To one of them he pointed out a horse as his property. He
did not purchase the buggy from either of these persons. Subse--
quently the son died. Dr. Cline seems to have been his attending
physician. He took out letters of administration upon Moore's
estate, and advertised the horse for sale as property of the estate.
The mother filed her claim. The record does not disclose that the·
son had any debts at the time of the gift of the horse to his mother,
or that at the time of his death he owed any debt except that to·
Cline for medical services. Upon the trial of the case the jury
found against the claimant, holding the property subject to be ad-
ministered as belonging to the estate of the son. The claimant
moved for a new trial. The motion was overruled, and the mov-
ant excepted.

1. The defendant in error filed no brief in this court. The charge
of the court was not sent up in the record. Counsel for plaintiff
in error insisted that the verdict was contrary to the evidence, in
the following language : "Exceptions to 1st, 2nd, & 3rd grounds.
See Evidence." On this point nothing more appears in their brief.
We are therefore at some loss to determine upon what theory the·
case was tried and decided in the court below. After a careful
reading of the evidence, we can see no reason for the verdict of the.
jury, unless they were of opinion that there was not sufficient evi-
dence of the delivery of the horse to the claimant. If there is truth
in human testimony, the evidence demonstrates that the son did
give the horse to the claimant. Two disinterested persons testi-
fied that they were present and heard the conversation, and that
the gift was made. Another disinterested person testified that the.
son afterward admitted having given the horse to his mother.
Now, was there sufficient evidence of delivery ? Courts differ as
to what will constitute a delivery under such circumstances. Some
of them hold that to constitute a delivery to one's mother, living
in the same home, the mother must have taken actual possession
of the property and exercised over it such acts of ownership as to
put the world on notice that it was hers; that she must have.
changed the location of the horse from the lot wherein it was con--

fined to some other place. Others hold that for her to allow the son afterwards to use the horse would be evidence of fraud. Others hold that delivery need generally be nothing more than some formal act indicating that the donor relinquishes and the donee assumes title; that once delivery has been perfected, possession may be returned to the donor without affecting the title except as to a presumption of fraud. Where transactions are between husband and wife, parent and child, members of the same household, it is difficult to lay down any fixed rule as to what will amount to a delivery of a chattel. Each case must be decided largely upon its own facts. The question will generally depend upon the bona fides of the transaction, the honest intention of the parties, and the circumstances of the vendor or donor at the time of the sale or gift. Under our code it is not necessary that there should be an actual manual delivery of personalty. A constructive delivery is sufficient if the transaction is bona fide. In the present case, we find that the son thought he owed his mother for certain services rendered him. In payment of these services he gave her the horse, and she accepted it. It is true he does not appear to have led the horse from the lot and handed his mother the halter. There was but one lot, and the mother accepted the horse with knowledge that it was there. She afterwards exercised over it rights of ownership and control; and the case is therefore not controlled by *Burt* v. *Andrews*, 112 *Ga.* 465. If there was sufficient consideration, this amounted to a sale and delivery. But suppose it was a gift and not a sale,— the same rules apply as regards delivery, and the son, owing no debts, had a perfect right to give the horse to the claimant. It is true that in May, after this transaction in December, the son proposed to purchase a buggy and give as security for the payment therefor a mortgage on a horse whose description would indicate that it was this same horse. But if there had been a bona fide sale or gift consummated by delivery, such an offer on his part could not affect the claimant's title. She had title, and he had no right to mortgage the horse without her consent. It does not appear that she had knowledge or notice of the son's attempt or offer to mortgage the animal. Upon this subject see *Griffis* v. *Griffis*, 89 *Ga.* 142. In that case it was held that a transaction between father and son was bona fide, and the father's remarks, made after the transaction, that it was a sham, did not affect the title of

the son. The record does not indicate any contention on the part of the administrator that, even if the sale or gift was made, it was a fraudulent conveyance. There is in the record no intimation of fraud between the mother and the son. As far as appears the son had paid up all his debts, and, having no money to pay his mother, gave her the horse. Even if the conveyance had been fraudulent, the son's administrator would be estopped to attack it on that ground. He stands in the shoes of the intestate, and the latter if in life could not attack the transaction on the ground of fraud. Upon this subject see *Crosby* v. *DeGraffenreid*, 19 *Ga.* 290; *Beale* v. *Hall*, 22 *Ga.* 431; *Bush* v. *Rogan*, 65 *Ga.* 320; *Hall* v. *Armor*, 68 *Ga.* 453; *McDowell* v. *McMurria*, 107 *Ga.* 812.

2. There is nothing in the evidence act of 1889 (now Civil Code, § 5269), nor any of its amendments, including the act of 1900 (Van Epps' Code Supp. § 6200), which prohibits an administrator who defends a suit from testifying as to transactions or communications had with his intestate. This is true although the administrator is endeavoring to collect or keep assets of the deceased for the purpose of paying himself as a creditor of the estate he represents. The judge so ruled, and we think the ruling correct. This peculiar case is not embraced within any of the express exceptions to the evidence act, and by the act the courts are forbidden to make any exceptions other than those expressed.

*Judgment reversed. All the Justices concurring, except Lewis, J., absent.*