362

HARRELL *et al. v.* FIVEASH *et al.*

No. 11084. APRIL 17, 1936.

*H. G. Bell,* for plaintiffs. *N. L. Stapleton,* for defendants.

RUSSELL, Chief Justice. Two daughters of S. E. Fiveash, deceased, filed a petition against their mother, sister, and two brothers, praying that the title to certain real estate be decreed to be in plaintiffs and defendants as heirs of their father, who died in 1935; that Mrs. Susan Fiveash and P. L. Fiveash, the mother and one of the brothers of petitioners, be required to account to the plaintiffs for their share in certain money derived from the sale of live stock, etc., belonging to their father's estate and sold by said two defendants; and that other personal property of the estate be divided between plaintiffs and defendants as heirs at law of their father and husband. It is alleged that plaintiffs and defendants constitute all the heirs at law of the deceased, and are sui juris; that in 1925 S. E. Fiveash bought a described tract of land from Spooner for $3000, which amount he paid with his own funds, but had title thereto made to his wife, for the reason that "shortly prior thereto the Bank of Donalsonville failed, and there was considerable claims against S. E. Fiveash on alleged liability as a stockholder in said bank, which was in fact not a liability, but an alleged liability, and that title was taken to petitioners' mother until said claim could be paid, settled, or compromised;" that the father of petitioners also acquired title to another described tract of land the title to which is in their mother, but the purchase-price thereof was paid by S. E. Fiveash, their father; "that although title was taken to their mother, that in truth and in fact it was the property of their father and was understood and known by her and the other respondents to be a fact;" that petitioners' mother,

and their brother P. L. Fiveash (one of the defendants) were fraudulently planning to divide the property of their father between themselves, giving some small portions to the other respondents named, leaving petitioners without any share of said property; that their mother and P. L. Fiveash had sold live stock, etc., belonging to the estate of their father and received more than $2500 therefor; and that there is still left described live stock and other personal property of said estate, to which petitioners are entitled to their share as heirs of their father. The court dismissed the action on demurrer, and the plaintiffs excepted.

■ While there were both general and special demurrers to the petition, and the court sustained all demurrers, counsel in their briefs apparently concede that the case is dependent upon the ruling on general demurrer. After a careful consideration of the record and briefs of counsel, we have reached the conclusion that the court did not err in sustaining the general demurrer and dismissing the action. The controlling issue is whether the allegations of the petition are sufficient to create an implied trust in the father of the plaintiffs, as they contend, or whether the facts alleged show anything more than a gift by their father to his wife, one of the defendants. "As between husband and wife, parent and child, and brothers and sisters, payment of purchase-money by one, and causing the conveyance to be made to the other, shall be presumed to be a gift; but a resulting trust in favor of the one paying the money may be shown, and the presumption rebutted." Code of 1933, § 108-116. On demurrer, pleading must be strictly construed. As to the tract of 397-1/2 acres, the petition alleges that the plaintiff's father, S. E. Fiveash, bought the land from Spooner with his own money, but that the deed was made in the name of his wife because of "alleged liabilities which were not liabilities," in connection with the Bank of Donalsonville, in which he owned stock. If it could be held that the intention of S. E. Fiveash was entirely blameless, then the allegation of the petition just referred to would be worthless, because it would only tend to show that he owed no debts, and in that event he would have had a perfect right to have the deed made to his wife as a gift, which it would be presumed to be under the Code, just quoted. However, construing the petition as a whole, it is plain that the petitioners intended to convey the meaning that the title to the

land was placed in the name of Mrs. Fiveash by her husband for the purpose of delaying and hindering the Bank of Donalsonville in the collection of claims against him. This being so, his act would be fraudulent, and the plaintiffs, being his heirs, could take no advantage of the fraud; for equity in such transactions "visits the iniquities of the father upon the children," and will not permit the children of Fiveash to raise the question. They have no more right to raise such a question than their father had in his lifetime. If the petition sufficiently alleged that his wife took with knowledge of his intention, or otherwise participated in the fraud he sought to perpetrate on creditors, then, on the principle that in fraudulent transactions equity leaves both parties just as it finds them, the hands of neither of them are clean enough for equity to touch. "An executed contract, such as an absolute conveyance purporting on its face to be a deed for the sale of land, though in fact a 'mere sham' and made for the purpose of delaying or defrauding a creditor, is binding upon the maker, and he is estopped from impeaching it; but a bond for titles by the vendee in such deed, to reconvey to the vendor, being an executory contract, may, if directly connected with the fraudulent purpose for which the deed was made, be impeached by the vendee when sought to be enforced by the vendor. *Parrott* v. *Baker,* 82 *Ga.* 364 [9 S. E. 1068], and cases cited. Hence, a husband who, in order to delay or defeat the collection of a claim for alimony or other lawful demand against him, conveyed land to another person and put that person in possession, could not maintain against the latter an action for the breach of a bond given by him to reconvey the land whenever so required. This is so, not because the law is disposed to aid one of the wrong-doers in retaining the fruits of the unlawful transaction, but because it denies the benefit of its remedies to the other." *Cronic* v. *Smith,* 96 *Ga.* 794 (22 S. E. 915). See also, to the same effect, *Moore* v. *Cline,* 115 *Ga.* 405, 408 (41 S. E. 614) ; *McDowell* v. *McMurria,* 107 *Ga.* 812 (2) (33 S. E. 709, 73 Am. St. R. 155) ; *Boswell* v. *Boswell,* 147 *Ga.* 734 (2) (95 S. E. 247). "When both parties are at fault, and equally so, equity will not interfere, but will leave them where it finds them." Code of 1933, § 37-112.

■ We have dealt first with the portion of the petition relating to the real estate described therein, for the reason that if the peti-

tion had been sufficient to authorize the relief sought as to the realty, the court, having assumed jurisdiction for that purpose, would adjudicate all the issues as to the personalty. However, under the facts alleged, this petition can not be retained on the theory that the entire petition should not be dismissed if any part of it was sufficient to set up a cause of action. The general rule is that while realty may descend directly to the heirs, the personalty of an intestate and the right to distribute it inheres in the personal representative of the decedent. "Where a wife dies intestate, leaving no surviving child or descendant of child, the husband can not maintain suit to recover on debts due the estate of the wife, although her estate owes no debts and there is no administration." *Brown* v. *Mutual Life Insurance Co.*, 146 *Ga.* 123 (90 S. E. 856). The plaintiffs have an adequate remedy at law by procuring the appointment of an administrator to effect legal distribution of the estate of the intestate in the large amount of personal property of which the petition alleges he was the owner, and to obtain judgment against any of the heirs of their father who may have received and enjoyed money derived from the sale of his property, if any, in excess of their rights under the law. The court did not err in sustaining the demurrer and dismissing the action.

*Judgment affirmed. All the Justices concur.*

ATKINSON and GILBERT, JJ., concur in the headnotes, but not in all that is said in the opinion.